**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | | |
|---|---|---|
| FREEDOM INNOVATIONS, LLC, a Delaware limited liability company, | ) ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) | 2:14-cv-01028-RCJ-CWH |
| | ) ) | **ORDER** |
| CHAS. A. BLATCHFORD & SONS, LTD., an English entity, and BLATCHFORD PRODUCTS, LTD., an English entity, | ) ) ) ) ) | |
| Defendants. | ) ) | |

This case arises out of Plaintiff's use of technology that Defendants allege violates their patent. Plaintiff brought this action seeking a declaratory judgment of non-infringement. Currently pending before the Court is Defendants' Motion to Dismiss (ECF No. 14) and Plaintiff's Motion to Enjoin Prosecution (ECF No. 20) of a later filed case by Defendants in another jurisdiction. For the reasons contained herein, Defendants' motion is GRANTED and Plaintiff's motion is DENIED as moot.

**I.   BACKGROUND**

Plaintiff is a limited liability company organized under the laws of Delaware with its principal place of business in Irvine, California. (Carkhuff Decl. ¶ 2, ECF No. 21). Its business deals with designing and producing lower limb prosthetics. (*Id.* ¶ 3). Plaintiff's manufacturing is

1

1  done in Utah. (*Id.* ¶ 4).  Plaintiff holds a number of patents and owns over twenty product brands
2  related to prosthetic foot/ankle systems, including the KINTERRA® brand. (*Id.* ¶ 3).
3        Defendants Chas. A. Blatchford & Sons, Ltd. and Blatchford Products, Ltd. are both
4  entities organized under the laws of the United Kingdom with their principal places of business
5  located in Basingstoke, Hampshire, United Kingdom. (Blatchford Decl. ¶ 1, ECF No. 15).
6  Defendants have no facilities in Nevada nor are they registered to do business within the state.
7  (*Id.* ¶ 4).  Neither Defendant sells or distributes products directly to unrelated third parties within
8  the United States. (*Id.*).  Defendant Blatchford Products, Ltd. holds United States Patent No.
9  8,574,312 ("the '312 patent"), which covers the design for a certain prosthetic foot/ankle
10 assembly. (*Id.* ¶ 3).  This patent is exclusively licensed to Blatchford, Inc., a wholly-owned
11 subsidiary of Defendant Chas. A. Blatchford & Sons in the United States. (*Id.* ¶ 6).  Blatchford,
12 Inc. is a Delaware corporation with its headquarters and facilities in Miamisburg, Ohio. (*Id.* ¶ 5).
13 Blatchford, Inc. is not a defendant in this case.
14       The '312 patent issued on November 5, 2013, after which Defendants contacted Plaintiff
15 stating their belief that the KINTERRA® system utilized features of the '312 patent. (*Id.* ¶ 7).
16 The parties conferred on the matter by letter and telephone until they agreed to a face-to-face
17 meeting to discuss a potential license agreement on February 5, 2014, when both parties would
18 have representatives attending the Hanger Education Fair and National Meeting ("Hanger Fair"),
19 a tradeshow for the medical device industry, in Las Vegas, Nevada. (*Id.* ¶¶ 8–9; Carkhuff Decl.
20 ¶ 7).  Blatchford, Inc. also attended the Hanger Fair and made presentations to the participants.
21 (*Id.* ¶ 12).  While in Las Vegas, the parties were unable to reach a mutually acceptable licensing
22 arrangement. (Carkhuff Decl. ¶12).  The parties met two more times in New York to negotiate a
23 potential licensing agreement. (*Id.* ¶ 13).  When the parties failed to reach an amicable solution,
24

2

Plaintiff filed this declaratory judgment action in the District of Nevada and Defendants filed a patent infringement suit in the Southern District of Ohio. Defendants seek dismissal of Plaintiff's case under Rule 12(b)(2) for lack of personal jurisdiction. Plaintiff opposes that motion and requests that this Court enjoin the prosecution of the Ohio infringement suit on the grounds that it was filed after this case.

## II.    DISCUSSION

When evaluating personal jurisdiction in an action seeking declaratory judgment of patent non-infringement, the court applies the Federal Circuit's case law rather than the case law of the regional circuit. *Avocent Huntsville Corp. v. Aten Int'l Co.*, 552 F.3d 1324, 1329 (Fed. Cir. 2008). As a procedural matter, when ruling on a motion to dismiss, the district court must accept "the uncontroverted allegations in the plaintiff's complaint as true and resolve any factual conflicts in the affidavits in the plaintiff's favor." *Elecs. for Imaging, Inc. v. Coyle*, 340 F.3d 1344, 1349 (Fed. Cir. 2003). Accordingly, if there are discrepancies in the facts relating to personal jurisdiction, the Court must resolve them in Plaintiff's favor.

The "constitutional touchstone" for personal jurisdiction is "whether the defendant purposefully established 'minimum contacts' in the forum State." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). Personal jurisdiction may be either general or specific. General personal jurisdiction requires "the defendant have 'continuous and systematic' contacts with the forum state and confers personal jurisdiction even when the cause of action has no relationship with those contacts." *Silent Drive, Inc. v. Strong Indus., Inc.*, 326 F.3d 1194, 1200 (Fed. Cir. 2003) (quoting *Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408, 414–16 (1984)).

1  Here, Defendants clearly are not subject to general personal jurisdiction in Nevada.
2  Nothing in the record indicates that either Defendant conducts business anywhere in the United
3  States.  The fact that the Defendants are not licensed to do business in Nevada is also indicative
4  of the lack of general personal jurisdiction. *See Helicopteros*, 466 U.S. at 416 (rejecting
5  plaintiff's assertion of personal jurisdiction where the defendant was not licensed to do business
6  in the forum state and did not have a place of business there).  Blatchford, Inc.'s status as
7  Defendants' subsidiary can also not generate general personal jurisdiction over Defendants in
8  this case because Blatchford, Inc.'s alleged activities in Nevada are not "so continuous and
9  systematic as to render [Defendants] essentially at home in the [] state." *Daimler AG v. Bauman*,
10 134 S. Ct. 746, 761–62 (2014) (citation omitted) (holding that an out-of-state defendant was not
11 subject to general personal jurisdiction when its subsidiary was neither incorporated in the forum
12 nor had its principal place of business there).  Therefore, if Defendants are subject to personal
13 jurisdiction in this forum, it must be based on specific jurisdiction.

14  A district court may exercise specific jurisdiction over a defendant "if the cause of action
15 'arises out of' or 'relates to' the defendant's in-state activity." *Burger King*, 471 U.S. at 472–73.
16 "Determining whether personal jurisdiction exists over an out-of-state defendant involves two
17 inquiries: whether a forum state's long-arm statute permits service of process, and whether the
18 assertion of personal jurisdiction would violate due process." *Inamed Corp. v. Kuzmak*, 249 F.3d
19 1356, 1359 (Fed. Cir. 2001).  Nevada's long-arm statute, NRS 14.065, reaches "the outer limits
20 of federal constitutional due process." *Certain-Teed Prods. Corp. v. Second Judicial Dist. Court*,
21 479 P.2d 781, 784 (Nev. 1971).  Accordingly, in this case the specific jurisdiction analysis is
22 compressed into a single inquiry of whether it comports with due process. *Patent Rights Prot.*
23 *Grp., LLC v. Video Gaming Techs., Inc.*, 603 F.3d 1364, 1370 (Fed. Cir. 2010).

24

4

To determine whether exercising personal jurisdiction over a particular defendant would violate due process, the court applies a three-prong test that asks whether: "(1) the defendant purposefully directed its activities at residents of the forum, (2) the claim arises out of or relates to those activities, and (3) assertion of personal jurisdiction is reasonable and fair." *Autogenomics, Inc. v. Oxford Gene Tech. Ltd.*, 566 F.3d 1012, 1018 (Fed. Cir. 2009) (quoting *Breckenridge Pharm., Inc. v. Metabolite Labs., Inc.*, 444 F.3d 1356, 1363 (Fed. Cir. 2006)). "The first two factors correspond with the 'minimum contacts' prong of the *International Shoe* analysis, and the third factor corresponds with the 'fair play and substantial justice' prong of the analysis." *Id.* at 1019 (citations omitted).

### A. Purposeful Direction and Relation

Under the first two prongs of the analysis, "[t]he relevant activities are those the defendant 'purposefully directs . . . at the forum which relate in some material way to the enforcement or the defense of the patent.'" *Id.* at 1020 (quoting *Avocent*, 552 F.3d at 1336). Indeed, a declaratory judgment action "neither directly arises out of nor relates to the making, using, offering to sell, selling, or importing of arguably infringing products in the forum, but instead arises out of or relates to the activities of the defendant patentee in enforcing the patent or patents in suit." *Avocent*, 552 F.3d at 1332. Thus, "the mere sale of defendant's products—whether covered by the patents in suit or not—is not sufficient to establish specific personal jurisdiction in a declaratory judgment suit." *Id.* at 1338. Likewise, "cease-and-desist" communications alone are generally insufficient to create specific personal jurisdiction even when directed at a forum, regardless of whether they are transmitted by letter, e-mail, or in-person negotiations. *Autogenomics, Inc.*, 566 F.3d at 1019 (looking for contacts beyond face-to-face licensing negotiations held in the forum to establish personal jurisdiction). The

5

1 "policy considerations unique to the patent context" require that a patentee be afforded
2 "sufficient latitude to inform others of its patent rights without subjecting itself to jurisdiction in
3 a foreign forum." *Avocent*, 552 F.3d at 1333 (citation omitted). "Grounding personal jurisdiction
4 on such contacts alone would not comport with principles of fairness." *Red Wing Shoe Co. v.*
5 *Hockerson-Halberstadt, Inc.*, 148 F.3d 1355, 1361 (Fed. Cir. 1998).

6 However, when cease-and-desist communications are coupled with "'other activities' that
7 relate to the enforcement or the defense of the validity of the relevant patents," the assertion of
8 personal jurisdiction is warranted. *Avocent*, 552 F.3d at 1334. "Examples of these 'other
9 activities' include initiating judicial or extra-judicial patent enforcement within the forum, or
10 entering into an exclusive license agreement or other undertaking which imposes enforcement
11 obligations with a party residing or regularly doing business in the forum." *Id.*; *see also*
12 *Breckenridge*, 444 F.3d at 1366 (stating that a defendant may be subject to personal jurisdiction
13 in a forum if the exclusive licensee "with which it has established a relationship is not
14 headquartered in the forum state, but nonetheless conducts business there").

15 With this standard in mind, the Court finds that Defendants have not purposefully
16 directed enforcement activities at Nevada. As stated, Defendants themselves do not do business
17 of any type in Nevada. The sum of Defendants' actions within the forum includes only the
18 meeting with Plaintiff in Las Vegas and an exclusive licensee relationship with a party that
19 allegedly conducts business in Nevada. (Carkhuff Decl. ¶ 12; Pl.'s Opp'n to Defs.' Mot. to
20 Dismiss 4–5, ECF No. 19). The meeting in Las Vegas alone cannot be the basis for personal
21 jurisdiction in this declaratory judgment action. The purpose of the meeting was to discuss the
22 alleged infringement and potentially negotiate a licensing agreement. (Carkhuff Decl. ¶ 9). This
23 is the type of cease-and-desist communications that the Federal Circuit holds does not alone give
24

6

rise to personal jurisdiction. *See, e.g.*, *Autogenomics, Inc.*, 566 F.3d at 1019 (finding that in-person licensing negotiations alone did not create specific jurisdiction); *Silent Drive*, 326 F.3d at 1202 (holding that "letters threatening suit for patent infringement sent to the alleged infringer by themselves" do not create personal jurisdiction); *Red Wing Shoe*, 148 F.3d at 1359–60 (noting that even an offer for a license within a cease-and-desist letter sent to the forum does not alone create specific jurisdiction);.

The Court then must determine whether Defendants' exclusive licensing agreement with Blatchford, Inc. constitutes "other activities" as defined by the Federal Circuit. In this situation, "the crux of the due process inquiry" focuses on the patentee's relationship with the exclusive licensee "headquartered or doing business in the forum state" and requires a "close examination of the license agreement." *Breckenridge*, 444 F.3d at 1366. In particular, "the license agreement [must] contemplate a relationship beyond royalty or cross-licensing payment, such as granting both parties the right to litigate infringement cases or granting the licensor the right to exercise control over the licensee's sales or marketing activities." *Id.* "[W]hen the patentee enters into an exclusive license or other obligation relating to the exploitation of the patent by such licensee or contracting party in the forum, the patentee's contractual undertaking may impose certain obligations to enforce the patent against infringers. By such conduct, the patentee may be said to purposefully avail itself of the forum and to engage in activity that relates to the validity and enforceability of the patent." *Avocent*, 552 F.3d at 1336. However, even if a patentee-licensee relationship exists, the "purposefully directed prong of the minimum contacts analysis requires [the court] to critically examine the roles" of each entity in the forum because the only contacts that are relevant "are those that relate in some material way to the enforcement or the defense of the patent[] at issue." *Id.* at 1338.

1  Here, the existence of a continuous relationship between patentee and exclusive licensee
2 is not disputed since Blatchford, Inc. is Defendants' subsidiary.  Blatchford, Inc. is not, however,
3 a resident of Nevada, which means that if the licensee relationship is to be the basis of specific
4 jurisdiction over Defendants, it must be because Blatchford, Inc. regularly does business in the
5 forum. *See Avocent*, 552 F.3d at 1334.  Plaintiff's complaint consists of unsupported conclusory
6 statements that "Defendants have conducted business in and directed to Nevada" and "have
7 engaged in various acts in and directed to Nevada, including attendance at and promotion of
8 products at tradeshows in Las Vegas."  (Compl. ¶ 5, ECF No. 1).  The complaint never mentions
9 Blatchford, Inc. or its status as the exclusive licensee of the '312 patent.  Moreover, Plaintiff's
10 complaint and the declarations submitted in response to this motion fail to allege any
11 enforcement efforts in Nevada by any of the Blatchford entities beyond the Las Vegas meeting.

12  Further, Plaintiff's Opposition does not discuss any specific actions directed at Nevada
13 other than arguing that "[t]here can be no question" that Blatchford, Inc.'s attendance at the
14 Hanger Fair in Las Vegas constitutes business activities. (Pl.'s Opp'n to Defs.' Mot. to
15 Dismiss 4).  Yet, Plaintiff does not mention whether Blatchford, Inc. consistently attends
16 tradeshows in Las Vegas.  On these facts, the Court cannot conclude that Blatchford, Inc.
17 *regularly* does business in the forum or that it has engaged in any sort of enforcement activity in
18 the forum. *See Avocent*, 552 F.3d at 1338 (finding plaintiff's complaint "fatally deficient"
19 because it did not explicitly identify the defendant's domestic subsidiary that allegedly
20 conducted business in the forum state or explain the relationship between the entities, but instead
21 the complaint merely alleged that the defendant engaged in unspecified sales and marketing
22 activity through agents or affiliates).

Plaintiff contends that this case is analogous to *Breckenridge* where the Federal Circuit reversed the district court's finding that it did not have personal jurisdiction over a defendant. In that case, the plaintiff sued two out-of-state defendants seeking a declaratory judgment of non-infringement where one defendant was the patent holder and the other was the exclusive licensee. *Breckenridge*, 444 F.3d at 1359–60. The defendants had sent letters to the plaintiff's customers advising them of the patent holder's rights and urging them to seek legal advice before distributing any generic equivalent of the drug covered by the patent at issue. *Id.* at 1360. The court held that personal jurisdiction was appropriate over the patent holder because the exclusive licensee conducted business in the forum and the license agreement resulted in an on-going relationship between the patent holder and the licensee. *Id.* at 1367–68.

*Breckenridge* is distinguishable from the present case in at least two important ways. First, in *Breckenridge* the patent holder and the exclusive licensee collaborated in their efforts to enforce the patent by jointly sending out letters warning customers of potential infringing activities. Here, on the other hand, nothing in the record shows Blatchford, Inc. working with Defendants to enforce the '312 patent. Those present at the Las Vegas meeting were Stephen Blatchford, CEO of Defendant Chas. A. Blatchford & Sons, Mir Saeed Zahedi, Defendant Blatchford Products' head of research and development, and Plaintiff's representatives. (Carkhuff Decl. ¶ 12). The record does not indicate that Blatchford, Inc. was also represented at the meeting or that it participated in the subsequent licensing negotiations between Defendants and Plaintiff. The Court acknowledges that the close relationship between Defendants and Blatchford, Inc. could logically mean that Stephen Blatchford's presence at the meeting equated to representation of all Blatchford entities. However, Plaintiff does not make this argument and the Court cannot simply assume that it is accurate. Second, in *Breckenridge* the plaintiff brought

the declaratory judgment lawsuit in its "home" state. In this case, not only are Defendants and Blatchford, Inc. not organized or located in Nevada, but neither is Plaintiff. Therefore, the Court finds that Defendants have not purposefully directed enforcement efforts at Nevada by entering into an exclusive licensing agreement with Blatchford, Inc.

### B. Reasonableness and Fairness

Since the Court finds that this cause of action does not arise out of or relate to sufficient enforcement activities directed at Nevada by Defendants or Blatchford, Inc., it need not address the third prong of the specific jurisdiction analysis. The Court notes, however, that the facts as alleged disfavor a finding of reasonableness and fairness in subjecting Defendants to personal jurisdiction in this forum. A court should be wary of exercising personal jurisdiction where "the plaintiff's interest and the state's interest in adjudicating the dispute in the forum are so attenuated that they are clearly outweighed by the burden of subjecting the defendant to litigation within the forum." *Patent Rights Prot. Grp.*, 603 F.3d at 1369 (citing *Beverly Hills Fan Co. v. Royal Sovereign Corp.*, 21 F.3d 1558, 1568 (Fed. Cir. 1994)). Here, Nevada does not have any particular interest in the litigation. None of the parties are Nevada corporations or have headquarters in the state, and Defendants are not licensed to do business here. Defendants' exclusive licensee is also not incorporated in the forum nor does it have headquarters in the state. Whether Plaintiff is or is not infringing Defendants' patent is thus not a matter of special concern to Nevada. Moreover, Plaintiff has offered no reasons why Nevada is its preferred forum to seek a declaratory judgment. Presumably it is because this is the forum closest to Plaintiff's headquarters that Plaintiff could genuinely argue has personal jurisdiction over Defendants. (Carkhuff Decl. ¶ 11). These facts indicate that Plaintiff's and the state's interests in

adjudicating this case in Nevada are quite attenuated, while the burden on Defendants to defend themselves in the forum could be considerable.

Therefore, Defendants' motion to dismiss is GRANTED without prejudice.

## CONCLUSION

IT IS HEREBY ORDERED that Defendants' Motion to Dismiss for Lack of Personal Jurisdiction (ECF No. 14) is GRANTED without prejudice.

IT IS FURTHER ORDERED that Plaintiff's Motion to Enjoin Prosecution (ECF NO. 20) is DENIED as moot.

IT IS SO ORDERED.

Dated: October 15, 2014

_____
ROBERT C. JONES
United States District Judge